UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**THERESA HART,**                   )
*Parent and Next Friend of S.H.*,   )
                                    )
    **Plaintiff,**     )
                                    )
    v.                )    Case No. 17-cv-02494 (APM)
                                    )
**DISTRICT OF COLUMBIA,**           )
                                    )
    **Defendant.**     )
_____ )

## MEMORANDUM OPINION

In this action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, Plaintiff Theresa Hart advances two claims. In Count I of her Complaint, she asserts that the hearing officer "failed to consider expert testimony that a comprehensive psychological assessment was warranted for [her son] S.H. since February 2015." Compl., ECF No. 1, at 7–8. In Count II, Plaintiff contends that "Defendant's failure to conduct a full triennial evaluation of S.H. for nearly three years was a substantive denial" of a "free appropriate public education," or "FAPE." *Id.* at 9. Before the court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. for Summ. J., ECF No. 9 [hereinafter Pl.'s Mot.]; Def.'s Opp'n to Pl.'s Mot. & Cross-Mot. for Summ. J., ECF No. 10 [hereinafter Def.'s Cross-Mot.]. After a thorough review of the record, and applying the controlling standard of review, *see Z.B. v. District of Columbia*, 888 F.3d 515, 523 (D.C. Cir. 2018), the court affirms the decision of the hearing officer. Accordingly, the court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Cross-Motion for Summary Judgment.[1]

---

[1] As the court writes primarily for the parties, it presumes their knowledge of the administrative record and refers only to those facts necessary to resolve Plaintiff's claims.

I.

A.

Plaintiff frames her first claim in largely procedural terms. She asks the court to "(1) rule that the hearing officer erred in dismissing Dr. Nelson's expert testimony without any reason and (2) find that a comprehensive psychological assessment was warranted for S.H. since February 2015 because of his excessive absenteeism." Pl.'s Mot., Mem. of P. & A. in Supp. of Mot. for Summ. J. [hereinafter Pl.'s Mem.], at 8. The court agrees with Plaintiff that the hearing officer appears not to have considered Dr. Nelson's expert opinion that S.H. should have received a new psychological evaluation as part of his triennial reevaluation in February 2015. *Compare* Administrative R., ECF No. 8 [hereinafter AR], at 14–15 (hearing officer's finding), *with* AR 414–15, 416, 447 (testimony of Dr. Nelson). Although Defendant argues that the hearing officer considered and rejected Dr. Nelson's opinion, *see* Def.'s Cross-Mot., Mem. of P. & A. in Supp. of Def.'s Cross-Mot., ECF No. 10-1 [hereinafter Def.'s Opp'n], at 11–13, nothing on the face of the Hearing Officer Determination ("HOD") supports that conclusion. The hearing officer ought to have acknowledged Dr. Nelson's testimony and factored it into his decision-making. *See McLean v. District of Columbia*, 264 F. Supp. 3d 180, 185–86 (D.D.C. 2017) (finding error in hearing officer's failure to "give any consideration to [the plaintiff's experts'] professional opinions regarding [the child's] eligibility and need for special education").

That gap in reasoning does not, however, compel the factual finding that Plaintiff seeks: that a comprehensive psychological examination was warranted as part of S.H.'s February 2015 triennial evaluation. The IDEA does not mandate that a public agency administer additional testing as part of a reevaluation. *See* 20 U.S.C. § 1414(c)(4); 34 C.F.R. § 300.305(d); *see also Z.B.*, 888 F.3d at 523 ("To be sure, [the individual educational plan ("IEP")] evaluation does not always

require a school to conduct additional testing."). Thus, S.H. was not statutorily entitled to a new comprehensive psychological assessment.[2] Whether he should have received one is therefore a question of fact. The record contains conflicting evidence on that score. As noted, Dr. Nelson recommended a new evaluation. On the other hand, Latisha Chisholm, an expert in special education programming and placement and an expert in social work who taught S.H., testified that upon classification of S.H. as a student with emotional disturbance on February 6, 2015, no additional psychological testing was warranted to confirm that diagnosis. AR 555–57, 559, 574. It is not the province of the court to re-weigh this competing evidence. That is best done by the hearing officer, who heard all the testimony. Thus, this court cannot make the affirmative finding that Plaintiff seeks and, at most, would remand this matter for the hearing officer to take account of Dr. Nelson's opinion. *See Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 526 (D.C. Cir. 2005); *McLean*, 264 F. Supp. 3d at 186.

B.

The court declines, however, to order a remand because to do so would be futile. Even if the hearing officer were to find that S.H. should have received a new comprehensive psychological examination, the record does not support a finding that such an error constituted denial of a FAPE.

---

[2] Two points are worth noting here. First, the IDEA does require additional testing as part of a reevaluation if "requested . . . by the child's parents." 20 U.S.C. § 1414(c)(4)(B); *see also id.* § 1414(c)(4)(A)(ii); 34 C.F.R. § 300.305(d)(2). That provision does not apply in this case, however, because the hearing examiner expressly found that neither S.H.'s parents nor his advocates asked for a comprehensive psychological evaluation in connection with the triennial assessment. AR 15. Plaintiff does not contest that factual finding. *Cf. James v. District of Columbia*, 194 F. Supp. 3d 131, 135, 143 (D.D.C. 2016) (finding that the District of Columbia was required to conduct a comprehensive psychological assessment because the student's parent asked for one).

        Second, the IDEA provides that, if the IEP team and others decide that additional testing is *not* necessary to develop an IEP, the administering agency is required to notify the child's parents of that decision and explain "the reasons for the determination." 20 U.S.C. § 1414(c)(4)(A)(i); 34 C.F.R. § 300.305(d)(1)(i). In her Complaint, Plaintiff alleges that "Defendant failed to notify [her] of her right to overrule the school's decision not to conduct a comprehensive psychological assessment for S.H. at the February 2015, January 2016, or November 2016 IEP meetings." Compl. ¶ 57. Plaintiff does not, however, press this contention at summary judgment. That may be because she did not raise the issue during the administrative process. As a result, the court need not discuss this argument.

The failure to conduct additional testing is considered a procedural violation under the IDEA. *See Z.B.*, 888 F.3d at 524 ("[T]he failure to conduct an adequate functional behavioral assessment is a *procedural violation* that can have substantive effects . . . ." (citing *R.E. v. NYC Dep't of Educ.*, 694 F.3d 167, 190 (2d Cir. 2012) (emphasis added)). A procedural violation "will constitute a denial of a [FAPE] only if it 'results in loss of educational opportunity' for the student." *Leggett v. District of Columbia*, 793 F.3d 59, 67 (D.C. Cir. 2015) (alteration omitted) (quoting *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 834 (D.C. Cir. 2006)). A procedural violation gives rise to a *substantive* violation of the IDEA only if the procedural deficiency "(i) [i]mpeded the child's right to a FAPE; (ii) [s]ignificantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) [c]aused a deprivation of educational benefit." *McLean*, 264 F. Supp. 3d at 184 (alterations in original) (quoting 34 C.F.R. § 300.513(a)(2)). Thus, the "key inquiry regarding an IEP's substantive adequacy is whether, taking account of what the school knew or reasonably should have known of a student's needs at the time, the IEP it offered was reasonably calculated to enable the specific student's progress." *Z.B.*, 888 F.3d at 524.

Here, Plaintiff makes no serious attempt to show how the absence of a comprehensive psychological examination resulted in a "loss of educational opportunity" for S.H. *See* Pl.'s Mem. at 8–12. Notably, Plaintiff does not challenge the IEP developed for S.H. in February 2015, or later IEPs, as deficient in any particular way. *See Lesesne*, 447 F.3d at 834 (concluding that the plaintiff-parent's "claims [fell] short on the merits" because plaintiff "made no effort to demonstrate" that the child's education was affected by any procedural violations the school might have committed). The closest Plaintiff comes to doing so is by pointing out Dr. Nelson's testimony that a new assessment would have shown "the stressors that are impacting [S.H.] and his ability to

get to school," thereby allowing school authorities to "devise interventions that are going to be helpful to the young person in getting him to school." Pl.'s Mem. at 5 (quoting AR 416). But that testimony is simply too generic to be of much probative value in determining whether a new evaluation would have translated into actual educational opportunities for S.H. Plaintiff's counsel appeared to concede as much at the hearing. When directly asked how new psychological testing would have made a difference for S.H., counsel responded: "[W]e're not exactly sure what would have been done in 2014 because absent having a time machine no one could know what would have been needed in 2014." AR 615–16. That answer is telling. Neither before the hearing officer nor this court has Plaintiff articulated any connection between the lack of a new psychological evaluation and any purported deficiencies in the February 2015 IEP developed for S.H.

Furthermore, other record evidence strongly suggests that a new comprehensive psychological examination would *not* have supplied material information that S.H.'s evaluators already did not possess. *See Z.B.*, 888 F.3d at 525 (finding error in the district court's failure to "address what DCPS would have known had it met its own obligation to evaluate" the student and noting that "it is not clear from the proceedings below whether DCPS would have learned anything more or different"). Based on the evaluation she conducted in August 2017, which Defendant had authorized the prior month, AR 259–60, Dr. Nelson diagnosed S.H. as suffering from ADHD and "emotional disturbance," which she described to be an "impulsivity disorder," AR 418; *see also* AR 268 (specifying DSM-V diagnosis as "Unspecified Disruptive, Impulse Control Disorder" and "Attention-Deficit/Hyperactivity Disorder"). She testified that S.H. is "a young person who is not in class to make progress because of his emotional disability and because of his ADHD." AR 422. But S.H.'s prior psychological assessment in 2011 had recognized S.H. as having ADHD, and

5

S.H.'s triennial evaluators understood that condition, AR 48, 82, 85.[3] And, in connection with S.H.'s triennial assessment in February 2015, S.H.'s evaluators classified him as having "ED"—emotional disturbance—without conducting a psychological examination. AR 82; *see also* AR 440 (testimony from Dr. Nelson agreeing with "ED" classification). Thus, new psychological testing would not have alerted S.H.'s triennial evaluators to a different diagnosis. Additionally, Defendant did conduct some new assessments in connection with the triennial evaluation to provide an updated picture of S.H.'s educational needs. In December 2014, Defendant prepared a new Functional Behavior Assessment. AR 50–53. That Assessment, which included an interview of S.H., described him as "oppositional-defiant, disruptive, and easily distracted resulting in multiple suspensions," AR 50, and recommended the development of a "[B]ehavior [I]ntervention [P]lan," AR 53. That Behavior Intervention Plan was completed on February 6, 2015, and offered a host of strategies to address S.H.'s "targeted behaviors," including "mood instability," "emotional disengagement," "irritability," "distractibility," and "defiance." AR 80. These are the same types of behaviors that Dr. Nelson identified in her psychological assessment. AR 261–70; 418–19. In short, there is good reason why Plaintiff has not cited any different information that a comprehensive psychological examination would have supplied about S.H. in February 2015: there appears to be none.

In sum, even if Defendant did commit a procedural violation by not ordering a new comprehensive psychological examination, Plaintiff has offered no reason to believe that such an error abridged S.H.'s substantive rights under the IDEA. A remand therefore is unwarranted, and the court will grant judgment on Count I in favor of Defendant.

---

[3] The February 2015 IEP states that S.H.'s disabilities include "Emotional Disturbance/Other Health Impairment." *See* AR 82. The court understands the designation "Other Health Impairment" to refer to ADHD. *See McLean*, 264 F. Supp. 3d at 182 (citing 34 C.F.R. § 300.8(c)(9)).

II.

Plaintiff's second claim is a variant on her first. As noted, Defendant authorized a private psychological assessment of S.H. in July 2017, which Dr. Nelson completed in early August 2017. Plaintiff contends that Defendant's "failure to reevaluate for over two years is a substantive denial of FAPE because that delay denies parents their substantive right to monitor a child's progress on an IEP through continual evaluations." Compl. ¶ 54. In other words, Plaintiff argues that the continued failure to psychologically reassess S.H. in the years *after* the triennial assessment constitutes a separate, actionable denial of a FAPE. *See* Mem. of P. & A. in Supp. of Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. & Reply to Def.'s Opp'n, ECF No. 13, at 9 ("To be clear . . ., this claim originates from DCPS's action and inaction in conducting a triennial evaluation for S.H. in February 2015. . . . Ms. Hart's claim, however, does not end at that time. Each day that DCPS failed to perform a necessary component of S.H.'s triennial evaluation, DCPS continued its ongoing violation of the IDEA.").

Plaintiff's claim is an odd one. If the court had found, as to Count I, that the failure to test S.H. anew in February 2015 constituted a substantive violation of the IDEA, then that finding would hold true not just for the February 2015 IEP, but in all likelihood for the following years, too, because S.H.'s future IEPs also would not have been informed by a current psychological evaluation. But, in that event, a separate claim for a "continuing violation" under Count II would be duplicative of Count I.

But given the court's ruling on Count I that Defendant did not violate the IDEA in February 2015 by not administering a new psychological assessment, that ruling also resolves Count II— there can be no "continuing violation" if no violation occurred in the first place. In short, not having violated the IDEA in 2015, Defendant did not violate it thereafter. To be sure, as discussed,

7

a failure to perform a statutorily-mandated or needed assessment can rise to a substantive violation of the IDEA. *See Z.B.*, 888 F.3d at 525; *James*, 194 F. Supp. 3d at 143–44. For example, in *James*, a case decided by this court and upon which Plaintiff heavily relies, the student's school had completely failed to implement two years' worth of IEPs, and when the student's mother made multiple requests for a comprehensive psychological evaluation, DCPS admitted that it was required to conduct one, but failed to carry it out. *See* 194 F. Supp. 3d at 141–43. In such circumstances, "[t]he failure to conduct a new comprehensive psychological evaluation" of the student meant that her "IEP might not be sufficiently tailored to her special and evolving needs." *Id.* at 144. But here there is no reason to believe that additional testing would have substantively affected the educational opportunities afforded to S.H. Plaintiff identifies no deficiency in her son's IEPs; nor does she identify any changed circumstances from the last comprehensive psychological evaluation, except excessive absences. Evaluators were well-aware of S.H.'s attendance problem, however, and addressed it in the February 2015 IEP and Behavior Intervention Plan. AR 82, 85, 89, 91 (addressing S.H.'s chronic absence from class). The record contains no evidence to suggest that the evaluators would have "learned anything more or different" from a comprehensive psychological evaluation, resulting in a "substantively different" IEP in 2016 or 2017. *Z.B.*, 888 F.3d at 525.

Therefore, the court will enter judgment in favor of Defendant on Count II.

III.

For the foregoing reasons, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. A separate final, appealable Order accompanies this Memorandum Opinion.

Dated: August 27, 2018

Amit P. Mehta
United States District Judge